Number 162242, Rita Pardee versus Nancy A. Berryhill. Thank you. Thanks. Good morning. Sarah Boer for the Appellant from Atlantic Beach, Florida. I'd like to reserve three minutes for rebuttal. You may. In this case, we are asking the court to reject the simple-minded notion that an administrative law judge in a Social Security case can rely on testimony of a vocational witness simply because the witness said so, if in turn the testimony is only supported by the unsubstantiated say-so of a private company whose methods the purported expert knows essentially nothing about. There's no question that in citing the numbers of jobs in the national economy that this party could perform, the vocational witness relied exclusively on the Skiltran proprietary software program. When asked what indicates the numbers are reliable, she said, well, I get them from Skiltran, and they're a reputable company. So she mailed red numbers off a computer screen and did not rely on her own internal hard drive. She didn't want that. She also testified that the Skiltran figures were generally used by vocational experts for this purpose. That's correct. All right. Under the Federal Rules of Evidence, that's enough under Federal Rules 702 and 703 to allow an expert to give an opinion relying on data, so long as that data is of a kind generally relied upon by experts in the field. This is a case where we're not even under the Federal Rules of Evidence. So what more does she have to say in order to put that before the ALJ and allow him to make the determination as to what weight to give it? She didn't understand how the numbers were even generated. She said if you testify, they use some sort of statistical numeric system that they use to estimate them. But I do not know how they did this. Counsel, I guess if you would hone in on precisely what Judge Sully is asking about, and that is when a qualified expert gets on the stand and then gives an opinion that's based on some other source, such as, for example, litmus paper, and says the litmus paper turned this, so I therefore do that. I think the proposition is all the expert then needs say is among experts in my profession, we generally rely on that as being accurate. It doesn't have to know how litmus paper works. Here doesn't have to know how Skilltran developed the stuff, as long as it's generally relied on by experts in the field. So I think that's the challenge you have to explain to us why that isn't a convincing argument. But in this case, we don't even know if she interpreted the data correctly. If she doesn't understand how the system works, it does require some manipulation, requires some interpretation. We don't know if she did it correctly, if she doesn't even understand the methodology that was used that she testified to. Suppose she used a slide rule to calculate the square root of something, and then said, I don't know how a slide rule works, but I know when you do this, people generally rely on it. She may have read it off a computer screen. I think more is required. This testimony is extremely important. The commissioner bears the burden of step five. They have to establish that there are significant numbers of jobs in the national economy. This affects everyday lives. All of that is true, but none of it goes to the questions that Judge Cayato and I are asking you. There is a body of law that tells you when evidence is deemed sufficiently reliable for an expert to be able to base an opinion on it. That body of law generally works off the proposition that if the expert can say that other experts in the field rely on this type of information, then the expert can offer the opinion. Why doesn't that proposition apply here? That is a theory called argumentum ad numerum. If enough people agree, then that becomes okay. If those people are experts, yes. If enough experts agree that the way to get to the square root of the number is to perform certain functions on Judge Cayato's slide rule, yes. That is absolutely the proposition. If experts generally don't agree to that, then that testimony shouldn't be allowed. I think more is really required. What case law do you have that says more is required? What case law do you have that says more is required? We cited in our briefing that there are no circuit court cases on the issue of scrutiny. The circuit court cases that you cited, I've read, and those are cases in which the expert did not make the statement that the V.E. made in this case, where the expert did not say that experts in my field generally rely on Skiltran. The expert just said something like, well, I don't know, Skiltran is a bunch of figures. But that's not this case. Well, if you look at the Maniscalvo case, this was cited in the District Court of Massachusetts just last year, cited as 167 F sub 2nd 207. In fact, the commissioner in that case emphasized in the V.E.'s testimony that Skiltran is respected software and used throughout the field. That's what the V.E. testified exactly as in this case. The reputation of the software issue company alone is not sufficient without some additional corroboration or endorsement based on the V.E.'s expertise and experience. In this case, the V.E.'s own testimony suggests that she did not call upon any independent expertise when calculating the job numbers. So this case, that was the reason, the same reason we gave here. It's respected. It's used in the community. And the court said, the District Court of Massachusetts said that was not sufficient. And there are other cases as well where the V.E.'s rely on the fact that other people use it. I mean, you can sort of see that if other people use it, it doesn't make it so. You have to understand the information. It's not just you have to understand how the data works, how to retrieve the information. If you go on the Skiltran website, they specifically state that individual vocational experts should understand more than just reading numbers because they can actually input data and change the information based on their own expertise. Before your time is up, may I ask you a question about the relationship between this issue that you have been arguing here and the first issue that you raised, which was to the effect that insufficient weight was given to Dr. Kessler's testimony. Is it the case that if we agree that based on weaknesses in the record, Dr. Kessler's record or whatever, that there is no basis to claim that Dr. Kessler's testimony was given insufficient weight? If that's the conclusion we come to, do we need even to reach this second issue? No, you would not. You could send the case back to the agency to address Dr. Kessler's opinion. She was this claimant's long-term treating orthopedist who rendered an opinion, and the ALJ in part relied on the motivation of the doctor, which the district court conceded was incorrect but found harmless error. So this is an important issue as well, that Dr. Kessler's opinion was not properly discredited. The reasons given by the district court, one of the reasons was found to be insufficient, and the commission conceded that as well. You could not rely on the motivation, the doctor's going to help you because he's your doctor, that can't be relied upon. And certainly if the case is remanded to reconsider, you would not need to reach the step five issue in this case. May I ask a further question on that line? My point was, if we conclude that Dr. Kessler's testimony was not unduly minimized in the weight that was given it, do we have to reach this second issue? And I'll tell you what's behind my question. As I understand it, unless Dr. Kessler's testimony is accepted, your client does not have a case. And if therefore we conclude that Dr. Kessler's testimony was weak testimony because, for example, his own observation notes, his own medical record, gave indications that in fact she was coming along fine. If we so conclude that, do we need to reach the second issue at all? Both issues would result in a remand in our view. If certainly we take a position that Dr. Kessler, while she was getting better, she had not healed yet. There's actually a listing on unhealed fractures, listing 1.07 of social security regulations. So she hadn't healed yet. That may be a reason to try to minimize the weakness of Dr. Kessler's record. But it still doesn't make a record supporting Dr. Kessler. Certainly he was telling her during her last visit she needed to walk with a cane and not put weight there. And that's an important finding, an important statement on the record. And that his opinion was supported by a CT scan of the left hip. She had an extremely nondisplaced fracture of the hip. She needed to keep her weight off and avoid any activity. And she recommended a cane. He recommended a cane to avoid further injury. You're arguing that in fact his testimony should have been given greater weight than it was given. My question assumes that we conclude it was not given unduly minimal weight. And if we conclude to that fact, contrary to what you argue, do we need to reach the second issue? Well, the second issue is important because the case would go back for further patient testimony. Yes or no, do we have to reach it or don't we? I think that you can decide what you want to decide. And I think it's an important issue that needs to be addressed. Certainly you don't have to reach the issue. No, you can decide not to reach the issue. Counsel, do you need to win the Kessler issue in order to get to step five? No, you do not. I mean, the step five, the case was denied at step five. We got through step four and reached step five. So step five, it burdens on the commissioner to show there's a substantial number of jobs. And he did testify that if Dr. Kessler's opinion were credited, there was no work that could be performed. But we are at step five in this case. Thank you. Thank you. Good morning, Your Honors. May it please the Court. My name is Molly Carter, and I represent the appellee, Nancy Berryhill, the acting commissioner of Social Security. Counsel, let me start where the questioning just ended. Do you agree that if we resolve the first point, the step two point, Dr. Kessler's testimony in favor of the government, that we nonetheless still have to reach the step five point? I do, Your Honor. My understanding is that the appellant's argument is that aside from the issues relating to the residual functional capacity and Dr. Kessler's opinion, that even on the residual functional capacity finding that was made in this case, the vocational testimony still is not sufficient. And if that is her argument, then, yes, you would still need to address the step five issue. So in a nutshell, we have an ALJ finding, in effect, that there is sufficient disability here, even discounting Kessler's testimony, to impose the burden on the government of showing that notwithstanding that level of disability, there are jobs in the national economy that she could do. Not that there's disability, but there are sufficient limitations such that the claimant cannot do her past relevant work, which is the inquiry at step four. So she can't do her own job, so we need to know she can do any job. Yes, and that is the purpose for which the vocational expert was called. And so that is the argument that I will focus on unless Your Honors have specific questions about the issues relating to the residual functional capacity finding. Commissioner's burden, it is the commissioner's burden at step five, but that burden is not particularly onerous. The regulations permit the commissioner to rely on the testimony of vocational experts, and in tens of thousands of cases every year, vocational expert testimony is substantial evidence supporting ALJ decisions. As Your Honors pointed out, the federal rules of evidence do not apply, and VEs are not affirmatively required to specify any of the process by which they come to the numbers that they testify to. But surely there are limitations on that. If a vocational expert were to say there are sedentary jobs available in sufficient number in the national economy, and I base that finding on something I read in my horoscope, that certainly wouldn't be probative evidence. Precisely, Your Honor, that is entirely true. Okay, so what your sister is saying in this case is that skin tram in this case is like the VEs horoscope. It is a meaningless collection of figures because the VE doesn't understand how it was put together. That's essentially her argument. So that's the argument you've got to respond to. Yes, Your Honor. First of all, it's important to note that the claimant, through her representative, made no objection to the testimony of this woman as a vocational expert, as an expert in the field. She was a qualified expert, and the claimant did not dispute that. Because she was asked what indicated that the numbers were reliable, the VE was required to explain generally the sources that she relied on and endorse the numbers that she cited as reliable, and she did so. It's not an accurate characterization to say that she knew nothing about these numbers or that they were completely unsubstantiated. When asked what indicated to her that the numbers were reliable, the VE said that she relied on Skiltran, which was a reputable company, and the data was used by VEs and experts in other areas. And as Your Honor's pointed out, that's not nothing. The reputation alone may or may not be sufficient to support the testimony, but that is an important point to note. I would analogize that to a scenario in which Your Honors asked me or my sister whether a case had been cited, and I answered. And I was asked how I knew that, what supported my answer, and I indicated that according to Westlaw this morning, the case had not been cited for that proposition. I can't tell you how precisely Westlaw gets their data. I assume they get it directly from the courts. And I can't tell you how they build their algorithm such that the little yellow or the little red flag pops up when the case has been cited positively or negatively. But particularly under a substantial evidence standard, everyone's room would agree that because we all use Westlaw and we rely on it every day, that would be substantial evidence to support my answer. Additionally, the vocational expert did not rely solely on the reputation. Again, it's not true that she knew nothing about these numbers. She indicated that Skiltran got their numbers from a variety of sources. One, the Bureau of Labor Statistics, which is a publication that the regulations also permit the ALJ to take administrative notice of. She also indicated that the numbers also came from field research, employees of Skiltran going out into the field to inform the numbers that way. And then she indicated that there was a statistical projection used to estimate jobs, not just for groups of codes, which has been a problem. This court itself noted as a problem in the past, but for individual jobs at the level of the Dictionary of Occupational Titles. One thing puzzles me here. I would think the Step 5 analysis in terms of any AHRQ qualifications, notwithstanding an OAHRQ disability, would come up literally thousands, if not tens of thousands of times a year in Social Security Administration proceedings. And if that's the case, there must be some common reference point that experts are using. It seems in this record that Skiltran comes out of nowhere. It's a very skinny description of how other people rely on it or don't. Is there anything in the case law that would shed some light on how generally available and used Skiltran is? I'm only aware of cases with similar testimony to this, that it's the phrasing in terms of widely used or used by other experts in the field. To your point regarding the commonality of this issue, I would argue that that goes to my point earlier that there is no affirmative requirement that VEs go into this analysis at all if they're not asked by ALJs or by claimants' representatives. So in many cases that courts around the country see, there's no Step 5 issue because the VE comes in and says, these are the jobs I think, these are the numbers that I estimate, and no questions are asked, and then ALJ and then subsequently the courts accept it. In terms of how these proceedings are conducted, did the person seeking the disability benefits, Ms. Purdy here, through counsel have a right to cross-examine on this point? She did, and that's how this whole testimony came about. She was given the opportunity to cross-examine first regarding the actual jobs themselves, and before we got to the question of the numbers, she was able, in fact, to cross-examine so effectively that the VE retracted her testimony that the individual, Ms. Purdy, would be able to do the job of call-out operator and substituted it for a different job. So she was quite effectively able to cross-examine the vocational expert. And then when it came time to the job numbers, she was again given the opportunity, she asked basically one substantive question, what indicates to you that these numbers are reliable, essentially presupposing that they were, and the vocational expert gave the response here, indicating that she understood the components of those numbers and that it was well-respected in her field, and no further questions were asked. In other cases, where do the numbers usually come from? They do often come from Skiltran. One thing to note is that Skiltran is actually the company and one of the softwares that they use that's common in this area is called Job Browser Pro, and so the case law often uses those phrases interchangeably, but it sort of comes down to the same issue. It's likely that when she said here that she got them from Skiltran, she got them actually from a software, most likely Job Browser Pro. Additionally, Skiltran's use is becoming more common because it is now able to estimate numbers at the actual dictionary occupational title job level. In the past, some of the cases used a source called the Occupational Employment Quarterly, I believe, which only gave numbers at a broader level, and then they were required to use their own experience to distill the numbers down to the actual jobs. So that was a source that was used a lot in the past and isn't as much anymore. So with the technology changing and the sources constantly changing, the sources that are identified as the basis for VE testimony sort of come and go. For what it's worth, it's also useful to remember that by the time cases get even to the district court and certainly to this court, we're sort of three to four years behind what is happening at the hearings themselves. If your honors have no further questions, we would ask that you affirm the district court. Thank you. Regarding the waiver issue, this was never raised in the district court. It was the question of reliability. It was clearly raised at the hearing, it was addressed, and waiver would only be a potential issue if there had never been questioning of the VE regarding the methodology used to come up with the numbers of jobs. The VE did testify that skilled trade uses field research. That's not accurate. If you go on the website, you can see they merely take data and input it in different methodologies, but they do not have any field experts going out into the field. So her testimony was actually incorrect on that point. Isn't that what cross-examination is for? Yes, I agree. I'm just mentioning to you because you can look at the website and see that. But that's not what we do. An appellate court can't find facts that aren't in the record by simply doing independent research on the net. I'm just pointing out that she didn't understand the methodology that was used, as I mentioned earlier. You asked for cases. I mentioned there's also another case from Massachusetts, the Maniscalco case, where the VE also said skilled trade is a respected software and used throughout the field. This is a case in Massachusetts decided also last year. When asked about the jobs, the VE was unable to provide the information for the basis of the jobs, and the court remanded the case based on the fact that that was not enough, that was insufficient. So it's our contention that in this case a vocational witness who merely parrots data from a private company whose reliability and validity are unknown, who doesn't even endorse the validity, doesn't say and adopt the information as her own. Many of the cases cited by the commissioner of the VE relied on the skilled trade but also testified that she adopted the information, she found it reliable. The VE testifies that they do their own research. And this, in our case, the fact that it's a reputable company and used by others, the person is not really truly serving as an expert witness by merely relying on some data who doesn't even understand how the data is created. So we submit that the individual, the VEs must have some knowledge about the information, must be able to testify to be a true expert about how the information is generated so that in order for the commissioner to meet the burden, step five to establish there are significant numbers of jobs in the national economy that the individual could perform in order to deny the case. Thank you. Thank you.